UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>PAVEL LONG<br>a/k/a<br>"PAVEL KARAPIN" | Case No.: 3:26-mj-02820-VET-1<br><br>**ORDER GRANTING MOTION TO DETAIN AND ORDERING PAVEL LONG DETAINED**<br><br>**[ECF Nos. 7, 12, 33]** |

Pavel Long, aka "Pavel Karapin," is presently the subject of an extradition request from the Czech Republic. ECF Nos. 1 at 2, 1-1 at 29. Pursuant to that request, the United States ("Government") arrested Mr. Long and moved to detain him based on risk of flight ("Motion"). ECF Nos. 5, 7, 12. The Court set a briefing scheduling on the Government's Motion and requested supplemental briefing following a hearing on June 10, 2026 ("June Hearing").[1] ECF No. 27. The Court held a final hearing on the Government's Motion on

[1] The Court also requested that the Government produce for in camera review a copy of Mr. Long's Alien File ("A-File"). ECF No. 27. The Government timely produced the

August 13, 2026 ("August Hearing"). ECF No. 34. For the reasons set forth herein, the Court **GRANTS** the Government's Motion and **ORDERS** Mr. Long detained.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Mr. Long is a 58-year-old naturalized United States citizen born in the Czech Republic under the name Pavel Karapin.[2] ECF No. 33 at 1. The Czech Republic seeks to extradite Mr. Long based on an October 11, 2000 conviction for tax evasion. ECF No. 1-1 at 29, 67. Mr. Long also has a conviction in the Czech Republic from February 10, 1993 for theft ("1993 Conviction"); he was sentenced to nine months imprisonment and probation. *Id.* at 106; ECF No. 36 at 22. Mr. Long represents that he received a suspended sentence for the 1993 Conviction, was never in custody or imprisoned, and believes his record was expunged. ECF No. 36 at 22.

#### 1. Notice of Charges in the Czech Republic and Subsequent Departure to the United States

On three occasions in March of 1997, Mr. Long directed a company transporting thousands of liters of alcohol across the Czech border from Austria to knowingly mis-identify the cargo as antifreeze to Czech customs officials. ECF No. 12 at 3, 5. Mr. Long allegedly also attempted to obtain fraudulent documents permitting the importation of antifreeze. *Id.* at 3–4. In doing so, the Czech Republic alleges, Mr. Long twice knowingly avoided and once attempted to avoid paying customs duties and taxes totaling the equivalent of hundreds of thousands of U.S. dollars. *Id.* at 5. During the third crossing Czech customs officials searched and seized the cargo. *Id.* at 3. The Czech police

A-File, bates-numbered 107–429. All citations herein to the A-file use the imprinted bates-numbers.

[2] As discussed below, Mr. Long legally changed his name from Pavel Karapin to Pavel Long as part of his naturalization process in the United States. ECF No. 32-1 at 43.

eventually identified Mr. Long as the individual primarily responsible for the shipping scheme. *See* ECF No. 1-1 at 59–62.

On January 19, 1998, the Czech police personally served Mr. Long with a "notice of charges" ("Notice of Charges"). ECF Nos. 1-1 at 67, 32-1 at 2. Mr. Long signed a receipt at the time of delivery stating that he received the Notice of Charges. ECF Nos. 32-1 at 2, 33-1 at 10–16 (receipt and related documents with translations). According to the Czech Ministry of Justice, the Notice of Charges is a document, September 9, 1997, that initiated criminal proceedings against Mr. Long ("1997 Charges"). The Notice of Charges "informed [Mr. Long] of the criminal offense with which he was charged and the specific conduct constituting that offense." ECF No. 32-1 at 2. The Czech Republic further represents that it summoned Mr. Long to appear for questioning on March 6, 1998, and he promised to appear as summoned. ECF No. 1-1 at 67. Mr. Long initially represented that he "was not aware of the charges" as of January 1998. ECF No. 31 at 22. However, at the August Hearing, he acknowledged that he "had received whatever papers" the Czech Republic represented that he had but argued that there is no record as to "what [the] notice of charges says." ECF No. 36 at 6, 10–11, 20.

On January 26, 1998, one week after receipt of the Notice of Charges, Mr. Long entered the United States through the Los Angeles International Airport. ECF No. 32-1 at 7. According to Mr. Long, the purpose of his travel at that time was to settle in the United States permanently. ECF No. 36 at 4. Mr. Long planned to live in California as he had friends in the state. ECF Nos. 31 at 19, 36 at 4.

### 2. Mr. Long's Failure to Appear and Conviction in Absentia

Mr. Long did not appear for questioning on March 6, 1998. ECF No. 1-1 at 67. On April 3, 1998, defense counsel representing Mr. Long informed Czech authorities that he was in contact with Mr. Long by telephone and proposed a new date of April 17, 1998 for Mr. Long to appear. *Id.* Mr. Long admits that he was in contact with his counsel at the time but represents that the attorney "never thereafter informed him that he was needed for

questioning." ECF No. 36 at 10–11. Mr. Long again failed to appear for questioning on April 17, 1998. ECF No. 1-1 at 67.

Beginning on April 11, 1998, and again in May, June, and November of that year, Mr. Long repeatedly left and re-entered the United States to avoid overstaying his visa. *See* ECF Nos. 32-1 at 9–17, 36 at 4–5. Mr. Long alleges that he returned to the Czech Republic at least twice while traveling between January and November 1998. *See* ECF Nos. 31 at 22–24, 36 at 4–5, 7, 10. He acknowledges, however, that available immigration records show travel only to and from Europe (not the Czech Republic specifically) or through Mexico. *See* ECF Nos. 32-1 at 9–17, 36 at 4–5. Mr. Long entered the United States on November 25, 1998 through the San Ysidro Port of Entry, and he did not travel outside the United States until after he obtained legal status in 2002. ECF Nos. 32-1 at 17, 25–28, 33-1 at 3–5, 36 at 7–8; *see also* A-File at 279. Because Mr. Long remained in the United States continuously from November 1998 through 2002, Mr. Long overstayed his visa. ECF No. 33-1 at 4; *see also* A-File at 283–84.

The Czech Republic began efforts to locate Mr. Long after he failed to appear in April 1998, beginning with a "nationwide search" in May 1998. ECF No. 1-1 at 67. In November 1998, Czech authorities issued a warrant for Mr. Long's arrest and formally indicted him on July 9, 1999. *Id.* Mr. Long was tried in absentia while represented by counsel and convicted on March 28, 2000. *Id.* His attorney appealed, and the appellate court quashed the conviction. *Id.* A second trial was held, again resulting in Mr. Long's conviction in absentia on July 3, 2000. *Id.* Following dismissal of Mr. Long's second appeal on October 11, 2000, the judgment against him became final and he was sentenced to six years imprisonment. *Id.*

### 3. Immigration Proceedings and Mr. Long's Name Change

While still in the United States, Mr. Long married Carol Long on October 13, 2001, and on December 20, 2001, he applied for legal permanent residency based on his marriage to Ms. Long, a United States citizen. ECF No. 32-1 at 23, 25–28. His "Application to Register Permanent Resident or Adjust Status" ("Resident Application") shows that

Mr. Long applied for status under the name "Pavel Long." *Id.* at 25. There is no evidence in the record showing that Mr. Long legally changed his name from "Pavel Karapin" to "Pavel Long" before using the name "Long" on his Resident Application. Further, under penalty of perjury, he answered "no" to a question asking whether he had ever "been arrested, cited, charged, indicted, fined, or imprisoned for breaking . . . any law or ordinance." *Id.* at 27. In the same application, Mr. Long stated that he last entered the United States on November 25, 1998, via San Diego, CA, using the name "Pavel Karapin." *Id.* at 25–26.

On August 22, 2002, the U.S. Immigration and Naturalization Service ("INS") conditionally granted Mr. Long legal permanent residency under the name "Pavel Long." A-File at 279; *see also* ECF No. 32-1 at 30. Thus, by August 2002, Mr. Long was no longer known or identified as "Pavel Karapin." *See* A-File at 180 (permanent resident card, dated August 22, 2002, issued under name "Pavel Long"). He subsequently petitioned INS to remove his conditional status. *See* ECF No. 32-1 at 30. On December 28, 2004, INS removed his conditional status, and Mr. Long became a legal permanent resident (under the name "Pavel Long") as of the date of his original admission, *i.e.*, August 22, 2002. *Id.*

On June 9, 2005, Mr. Long applied for naturalization as "Pavel Long." *Id.* at 32. He signed the Application for Naturalization ("Naturalization Application") as "Pavel Long," and under penalty of perjury, answered "no" to question nos. 15–21 asking whether he had ever:

15. "Committed a crime or offense for which [he was] NOT arrested;"
16. "Been arrested, cited, or detained by any law enforcement officer;"
17. "Been charged with committing any crime or offense;"
18. "Been placed in an alternative sentencing . . . program;"
19. "Been convicted of a crime or offense;"
20. "Been placed on probation;" or
21. "Been in jail or prison."

*Id.* at 39, 41.

INS interviewed Mr. Long as part of his Naturalization Application on November 29, 2005. *Id.* at 41. As a result of that interview, the INS officer made nine corrections/notations to his Naturalization Application.[3] *See generally* ECF No. 32-1 at 32–41; A-File at 113–22. Relevant here are corrections regarding his name. The officer crossed out "Long" and added "Karapin" under "current legal name" and checked the box indicating that Mr. Long wanted to "legally change" his name to "Pavel Long." ECF No. 32-1 at 32. The officer also indicated that Mr. Long claimed he "never" (i) committed a crime or offense for which he was not arrested or (ii) had been arrested, cited, or detained by any law enforcement officer for any reason. *Id.* at 39 (note in red ink stating "claims never" with corresponding marks on question nos. 15 and 16). On the date of his interview, Mr. Long signed the revised Naturalization Application, under penalty of perjury, as "Pavel Karapin." *Id.* at 41. On November 29, 2005, Mr. Long also signed a petition requesting to legally change his name from "Pavel Karapin" to "Pavel Long." *Id.* at 43.

On December 6, 2005, the United States granted Mr. Long citizenship under the name "Pavel Long" and granted Mr. Long's petition to legally change his name. *Id.* at 43, 48. Since that date, Mr. Long has lived continuously in San Diego, CA and occasionally traveled abroad, primarily to Mexico. ECF Nos. 32-1 at 50–53, 33-1 at 5–7. He has not returned to the Czech Republic or Europe since 1998. ECF Nos. 32-1 at 50–53, 33-1 at 3–7. Also, per Mr. Long, in 2013, 2018, and 2023, he received security clearances through the Transportation Security Administration as part of his employment, *i.e.*, delivery of freight to airports. ECF Nos. 31 at 14, 33 at 6–7, 36 at 12. Mr. Long indicates that he applied as "Pavel Long" but identified "Pavel Karapin" as a prior name on his clearance applications. ECF Nos. 31 at 14, 36 at 12–13.

---

[3] The INS officer, Freshta Youssofi, signed the Naturalization Application in red ink and the corrections are also numbered and reflected in red ink on the Application itself. *See generally* ECF No. 32-1 at 32–41; A-File at 113–22.

In terms of his contacts to the United States, Mr. Long acknowledges that he has no family in the United States and is apparently no longer married to Carol Long. *See* ECF No. 19 at 3. However, Mr. Long has an extensive network of friends in San Diego, CA and moved infrequently while residing in San Diego. *Id.* Per Mr. Long, he has no history of drug or alcohol abuse, does not use drugs, does not drink, and has no mental or emotional health issues. *Id.* at 4.

**4. Search for Mr. Long, Extradition Request, and Arrest**

Following his conviction in 2000, the Czech Republic gradually escalated its search for Mr. Long. Because the Czech Republic was not aware until 2020 that Mr. Long had changed his name, it continued searching for him under the name "Pavel Karapin." *See* ECF No. 32-1 at 21. The Czech court issued a warrant for "Pavel Karapin" to serve his sentence on October 20, 2000. *Id.* at 19. Following additional proceedings and investigation, the Czech court issued an international arrest warrant for "Pavel Karapin" on February 28, 2007. *Id.* at 20. On March 27, 2007, the court requested that the Czech Ministry of Justice seek Mr. Long's extradition, noting that he might be residing in the United States. *Id.* After further communications between the Czech court, the Czech police, and the Czech Ministry of Justice, including representations by the Czech police that Mr. Long's whereabouts were unknown, the Czech court issued a European arrest warrant for Mr. Long on November 2, 2015. *Id.* at 20.

On September 1, 2020, the Czech police informed the Czech court for the first time that "Pavel Karapin" was living in San Diego, CA as a U.S. citizen and had changed his last name to "Long." *Id.* at 21. Two days later, on September 3, 2020, Interpol issued a Red Notice for Mr. Long's arrest. ECF No. 1 at 2. Shortly thereafter, on February 18, 2021, the Czech court sent the Czech Ministry of Justice documents requesting Mr. Long's extradition, and on June 16, 2021, the Czech Republic formally requested that the United States extradite Mr. Long to the Czech Republic. ECF Nos. 1-1 at 29, 32-1 at 21. On June 13, 2023, the State Department certified the request as procedurally proper under

applicable U.S.-Czech treaties. ECF No. 1-1 at 3. U.S. authorities arrested Mr. Long on June 1, 2026. ECF No. 12 at 5.

**B. Procedural Background**

Mr. Long appeared before this Court on June 2, 2026 for his initial appearance. ECF No. 5. During that hearing, the United States orally moved to detain Mr. Long based on risk of flight and thereafter filed the instant Motion. ECF Nos. 7, 12. Following briefing on the Motion, *see* ECF Nos. 19, 22, the Court held the June Hearing. ECF No. 27. The Court ordered supplemental briefing to fully address the Court's questions and requested that the Government produce and lodge Mr. Long's A-file. *Id.*; *see also* ECF No. 31. The parties timely filed supplemental briefing on July 31, 2026, and following the August Hearing, the Court took the Motion under submission. ECF Nos. 32–34, 36.

## II. LEGAL STANDARD

"There is a presumption against bail in an extradition case . . . ." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989) (citing *Wright v. Henkel*, 190 U.S. 40, 63 (1903)); *see also United States v. Kirby (In re Kirby)*, 106 F.3d 855, 858 (9th Cir. 1996). "Under *Salerno*, the analysis to determine whether one facing an extradition hearing should be released first ascertains whether there is a risk of flight." *United States v. Taitz*, 130 F.R.D. 442, 445 (S.D. Cal. 1990) (internal citation omitted). "If no such risk exists, the court then determines whether any 'special circumstances' exist." *Id.*; *see also Salerno*, 878 F.2d at 317–18 (Absence of flight risk "is not the criteria for release in an extradition case."); 9B Fed. Proc., L. Ed. § 22:2349 (absence of flight risk is "a condition precedent to going forward with" the special circumstances analysis). "[S]pecial circumstances must exist in addition to absence of risk of flight" to support bail. *Taitz*, 130 F.R.D. at 444.

The term "special circumstances" is not precisely defined. *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996). Nevertheless, to overcome the strong presumption against bail, "[s]pecial circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *Id.* "This 'special circumstances' requirement creates a different standard for extradition cases than for federal criminal

cases, where bail is granted unless the judicial officer determines that release will not reasonably assure the appearance of the defendant as required." *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984). "The rationale for distinguishing pretrial release in extradition cases from federal criminal cases is that extradition cases involve an overriding national interest in complying with treaty obligations." *Taitz*, 130 F.R.D. at 444.

Therefore, in the extradition context, the Court does not apply the same principles as required under the Bail Reform Act. *See Matter of Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1213 (D. Nev. 1993). Instead, the Court considers the question of flight risk in the context of the United States' obligation to the Czech Republic pursuant to the applicable treaty. *See In re Extradition of Morrell*, No. 3:24-MJ-05020-TLF, 2024 U.S. Dist. LEXIS 31613, at *8–9 (W.D. Wash. Feb. 23, 2024) (citing *Wright*, 190 U.S. at 40).

## III. DISCUSSION

To be eligible for bond, Mr. Long must show as a threshold matter that he is not a flight risk. For the reasons discussed below, the Court finds that Mr. Long fails to meet his burden and overcome the presumption against bail.

First, the Court is persuaded that Mr. Long fled the Czech Republic upon receiving the Notice of Charges. *See* ECF No. 36 at 10–11, 20. The Czech Republic confirmed, with documentary evidence, that Mr. Long received the Notice of Charges on January 19, 1998, which put Mr. Long on notice "of the criminal offense with which he was charged and the specific conduct constituting that offense." ECF No. 32-1 at 2, 33-1 at 10–16. Mr. Long now admits he received the Notice of Charges. ECF No. 36 at 10–11, 20. And within a week of learning of the 1997 Charges, he left the Czech Republic with the intent of permanently settling in the United States. ECF Nos. 36 at 4, 32-1 at 2, 7. Mr. Long subsequently failed to return and appear for questioning in the Czech Republic despite being informed by his lawyer of the date for his appearance. ECF No. 1-1 at 67.

Second, the Court finds compelling that, at the first opportunity following his flight from the Czech Republic, Mr. Long abandoned the name "Pavel Karapin." There is no evidence in the record demonstrating that he took any steps to formally change his name

before identifying himself, including on formal immigration records, as "Pavel Long." Instead, it appears that he simply stopped using the "Karapin" name and, within two months of marriage, applied for legal status in the United States under the name "Pavel Long." ECF No. 32-1 at 25, 28. Only after an INS officer noticed the lack of any formal name change and required Mr. Long to correct his Naturalization Application did he petition for a formal name change in November 2005. ECF No. 32-1 at 43. Of course, by that juncture, Mr. Long had been using the name "Pavel Long" for at least four years (*i.e.*, since December 2001 when he first applied for legal status), including in his employment and tax records. *See, e.g.,* ECF No. 32-1 at 28, 32; A-File at 141–70, 180, 185–258, 299–338. "Pavel Karapin" in essence ceased to exist as early as December 2001 and certainly by August 2002 when he obtained legal status as "Pavel Long." *See* A-File at 180 (legal permanent resident card, dated August 22, 2002, issued under name "Pavel Long"); *see also* ECF No. 32-1 at 30. The name change no doubt frustrated attempts by Czech authorities to locate Mr. Long and certainly suggests an effort to hide. For these reasons, the Court rejects Mr. Long's contention that he was living "open[ly] and notoriously" in the United States before his arrest. *See* ECF No. 36 at 23.

Third, Mr. Long made material misrepresentations in immigration documents and to this Court. In both his Resident and Naturalization Applications, Mr. Long failed to disclose both the 1997 Charges and the 1993 Conviction. ECF No. 32-1 at 27, 39, 41. As detailed above, under penalty of perjury, Mr. Long answered "no" to questions in the Applications seeking information about prior arrests, charges, and convictions. *Id.* And having admitted to receiving the Notice of Charges and knowing of the 1993 Conviction, Mr. Long's representations in his Naturalization Application that he was never charged with committing a crime or convicted of a crime or offense were false. *See id.*; ECF No. 36 at 10–11, 20, 22.

Mr. Long's changing representations to this Court are similarly problematic. Specifically, during the June Hearing, the Court had the following exchange with counsel for Mr. Long:

> THE COURT: . . . Right now the representation is that, as of January 1998, Mr. Long had zero knowledge that he was wanted for questioning or that there was any charges against him. Is that correct?
>
> ATTORNEY HENRI: Yes, your Honor.

*See* ECF No. 31 at 22. Mr. Long also expressly represented that he "was not aware of the charges" as of January 1998. *See id.* Critically, only after Czech authorities confirmed service of the Notice of Charges did Mr. Long finally admit that he "received whatever papers [] the Czech Republic" represented he had received. ECF No. 36 at 10–11, 20.[4] The Court has no reason to doubt the Czech Republic's representation that those "papers," *i.e.*, Notice of Charges, explained to Mr. Long the charges against him and the specific conduct supporting those charges. *See* ECF No. 32-1 at 2.

The Court also has no reason to doubt that Mr. Long was in contact with his lawyer, who knew Czech authorities sought Mr. Long for questioning. ECF No. 1-1 at 67. At the outset, Mr. Long represented to the Court that he did "not recall [an attorney] calling him on the matter" in early 1998. ECF No. 31 at 22. At the August Hearing, Mr. Long admitted that he was in contact with an attorney participating in the proceedings on his behalf but claims the attorney "never [] informed him that he was needed for questioning." ECF No. 36 at 10–11. Except, according to the Czech Republic, the attorney communicated with Czech authorities on Mr. Long's behalf, represented that he was in contact with Mr. Long by telephone, and apparently "agreed" to April 17, 1998 as a "new date" for questioning after Mr. Long failed to appear on March 6, 1998. *See* ECF No. 1-1 at 67. The Court has difficulty believing that Mr. Long's attorney, after communicating with Czech authorities, then failed to contact and inform Mr. Long that he was required to appear on April 17,

---

[4] Mr. Long continues to argue, however, that the contents of the Notice of Charges are unknown as they are not before the Court. ECF No. 36 at 6 ("we don't know what the notice of charges says and, as noted in the timeline, he was not actually charged until later"), 10–11, 20.

1998 for questioning. *See id.*; ECF No. 36 at 10–11. Given Mr. Long's failure to truthfully respond to questions in immigration documents and his changing representations in this proceeding, the Court does not find Mr. Long credible. As such, the Court gives no weight to his representations that he did not know of the 1997 Charges or that he was wanted for questioning by Czech authorities. *See* ECF No. 36 at 10–11, 20.

Fourth, Mr. Long lacks significant community ties. Mr. Long has no familial ties to this community or the United States, including no spouse or children. *See* ECF Nos. 19 at 3, 33 at 12. He owns no real property and has no business interests that tie him to San Diego, CA or elsewhere in the United States. *See* ECF No. 15 at 3, 10. Nonetheless, Mr. Long points to his long-time residency in San Diego, his extensive network of friends in the community, and his involvement in the local Czech community and local recreational sports teams. ECF No. 19 at 3. He also submits 14 letters from friends attesting to his character, honesty, and impact on their lives and identifies three friends as potential sureties. ECF Nos. 33 at 13, 33-1 at 27–47. The Court has given serious consideration to Mr. Long's long-time residence in the United States and the significant friendships he formed while living in San Diego. Neither, however, persuades the Court that Mr. Long is not a flight risk, particularly in light of his previous flight from the Czech Republic and his misrepresentations to both this Court and in immigration documents.

The Court reaches the same conclusion regarding Mr. Long's representations that he has no ties to other countries besides the Czech Republic, has no financial means to travel, and is willing to surrender travel documents. ECF No. 19 at 5. While these are factors the Court considers, none are persuasive here. The close proximity of San Diego, CA to the Republic of Mexico, a country Mr. Long has regularly visited in the past, means that he can easily flee to another country, even in the absence of ties to Mexico, travel documents, and financial resources. *See* ECF No. 32-1 at 50–53. Moreover, given his repeated travel to Mexico via the pedestrian lanes at the San Ysidro, CA Port of Entry, the Court is not convinced that Mr. Long in fact has zero ties to Mexico. *See id.*

Lastly, the Court finds Mr. Long's reliance on *United States v. Bowman*, No. 19-mj-05089-JLB-1, 2020 U.S. Dist. LEXIS 29965 (S.D. Cal. Feb. 20, 2020), and *In re Chapman*, 459 F. Supp. 2d 1024 (D. Haw. 2006), unpersuasive. Specifically, during the August Hearing, Mr. Long cited both cases and relied primarily on *Bowman* to support his contention that bail is appropriate here. ECF No. 36 at 22, 27. He represented that the *Bowman* court granted bail despite finding that the defendant was a flight risk, and argued that under *Chapman*, flight risk in one factor among several that courts consider in determining bond. *Id.* at 27. Thus, according to Mr. Long, this Court can and should consider whether special circumstances exist to support bond even if it concludes that Mr. Long is a flight risk. *Id.* at 26–27. Mr. Long is wrong on all counts.

*Bowman* and *Chapman* both confirm that courts in extradition proceedings *first* ascertain, as a threshold requirement, whether a party is a flight risk, and *if no such risk exists*, then determine whether special circumstances justify bond. *See In re Chapman*, 459 F. Supp. 2d at 1026–1027 ("this Court recognizes lack of flight risk as the initial threshold Respondents must cross");[5] *Bowman*, 2020 U.S. Dist. LEXIS 29965, at *4–5 ("the absence of a defendant's risk of flight is more in the nature of a condition precedent to going forward with any determination of the existence of 'special circumstances'"). Thus, in both cases, the courts analyze in the first instance whether the parties seeking bail represent a risk of flight. *See In re Chapman*, 459 F. Supp. 2d at 1027; *Bowman*, 2020 U.S. Dist.

---

[5] Despite recognizing that flight risk is a threshold determination, the *Chapman* court further concluded that the "complete lack of flight risk" in that case rose to the level of a special circumstance because "it is such a prominent aspect of this case." *In re Chapman*, 459 F. Supp. 2d at 1027. Critically, *Chapman* involved visible, public figures with a lucrative and popular television series dedicated to pursuing fugitives. *Id.* at 1027. The *Chapman* parties risked losing not only "enormous future earnings from their television program," but also "their own identities and their popularity." *Id.* This unique set of facts persuaded the *Chapman* court to treat flight risk as a special circumstance. *Id.* The facts in this case do not support a similar conclusion—Mr. Long is not a public figure at risk of losing his identify and a lucrative television career should he flee.

LEXIS 29965, at *4–5. And, contrary to Mr. Long's representations, both courts conclude that the parties in each case are *not* flight risks. *In re Chapman*, 459 F. Supp. 2d at 1027; *Bowman*, 2020 U.S. Dist. LEXIS 29965, at *7. It is only after reaching that conclusion that the *Bowman* and *Chapman* courts proceed with an analysis of special circumstances. *In re Chapman*, 459 F. Supp. 2d at 1027; *Bowman*, 2020 U.S. Dist. LEXIS 29965, at *7–8. Hence, neither case stands for the proposition that special circumstances can support bond even if a party represents a flight risk or that flight risk is one of several factors for the Court to consider in determining bond.

Further, *Bowman* and *Chapman* are distinguishable on the facts. In both cases, the parties had significant financial interests and/or strong family ties in the community, including households, spouses, children, and/or grandchildren. *See In re Chapman*, 459 F. Supp. 2d at 1027; *Bowman*, 2020 U.S. Dist. LEXIS 29965, at *5–6. In *Chapman*, the parties were visible, well-known public figures who could not easily go into hiding. *In re Chapman*, 459 F. Supp. 2d at 1027. And, in contrast to this case, there was no evidence the parties in *Chapman* or *Bowman* abandoned their true names or fled from their home countries with knowledge of pending criminal charges. Additionally, in both cases, the parties were prepared to post substantial bonds that represented significant financial deterrents and were secured by real property owned by family members, cash, or a corporate surety. *See In re Chapman*, 459 F. Supp. 2d at 1027; *Bowman*, 2020 U.S. Dist. LEXIS 29965, at *7. In the absence of family members, significant personal assets, or financial interests in this community, a comparable bond representing a significant financial deterrent for Mr. Long is not possible here.

In sum, the Court finds that Mr. Long is a flight risk. Mr. Long fled the Czech Republic within days of receiving the Notice of Charges on January 19, 1998. And despite communications with his attorney during the relevant time frame, he failed to return to the Czech Republic for questioning. He then stopped using his true name and sought and obtained legal status in the United States under the name "Pavel Long." And, in the process of applying for legal status, Mr. Long made material misrepresentation to INS concerning

his criminal history. He was also less than forthright with this Court during these proceedings. Under these circumstances, the Court has little confidence that Mr. Long will appear at future court proceedings if released on bond.

Because the Court finds that Mr. Long is a flight risk, it does not address whether "special circumstances" exist to support bail. *See Taitz*, 130 F.R.D. at 444 (courts examine special circumstances only if no risk of flight exists).

## IV. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the Government's motion to detain Mr. Long.

**IT IS SO ORDERED**.

Dated: September 16, 2026

Honorable Valerie E. Torres
United States Magistrate Judge